UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSEPH E.,

                                  Plaintiff,

        v.

NANCY A. BERRYHILL, Deputy
Commissioner of Social Security for
Operations,

                                  Defendant.

CASE NO. C18-5604-MAT

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1962.[1] He completed high school, two years of college, and obtained a certification as a nursing assistant. (AR 764, 779.) He previously worked as a vocational trainer, union organizer, nursing assistant, and warehouse worker. (*Id*. and AR 478)

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

1    Plaintiff filed a DIB application on October 11, 2012, alleging disability beginning

2    December 1, 2009. (AR 172.) His application was denied initially and on reconsideration. ALJ

3    Virginia Robinson held a hearing on November 21, 2013, taking testimony from plaintiff and a

4    vocational expert (VE). (AR 31-71.) At hearing, plaintiff amended his alleged onset date to March

5    4, 2011. (AR 18, 36.) On January 31, 2014, the ALJ found plaintiff not disabled. (AR 18-26.)

6    Plaintiff timely appealed and the Appeals Council denied the request for review. (AR 1.)

7    Plaintiff appealed the final decision of the Commissioner to this Court and, on March 7, 2016, the

8    Court issued an order remanding the case for further administrative proceedings. (AR 571-90.)

9    The Court directed that, on remand, the ALJ should reconsider the medical opinion evidence of

10   record, particularly the opinions of Dr. Paul Lewis; take the opportunity to reconsider and fully

11   address any evidence associated with psoriatic arthritis at step two and beyond; and reassess

12   plaintiff's claims at all steps of the sequential evaluation process as may be warranted by further

13   consideration of the medical evidence. (AR 589.)

14   The Appeals Council vacated the final ALJ decision and remanded for further proceedings.

15   (AR 593.) The Appeals Council noted plaintiff filed an application for Supplemental Security

16   Income (SSI) on April 28, 2014, which was initially allowed on August 6, 2014 and plaintiff was

17   found disabled as of the application date. Plaintiff did not receive SSI because he did not

18   financially qualify at that time. (AR 711-25.) The Appeals Council directed the ALJ to consider

19   evidence in the SSI application "pertinent to the current case's period-at-issue." (AR 593.)

20   The ALJ held a second hearing on September 8, 2016, taking testimony from plaintiff.

21   (AR 491-524.) She subsequently supplemented the record with the opinions of two state agency

22   doctors taken from the 2014 SSI case and plaintiff amended his alleged onset date a second time,

23   to October 12, 2012. (AR 807, 810.) The ALJ issued a second decision on April 4, 2018. (AR

462-80.) She clarified that the period under consideration began as of the October 12, 2012 amended onset date and extended through December 31, 2014, plaintiff's "date last insured" (DLI) for DIB benefits. (AR 463.) The ALJ found plaintiff not disabled within that time period.

In the second decision, the ALJ noted plaintiff filed another SSI application in August 2016. (AR 754-60.) The application was denied initially and on reconsideration and, at the time of the ALJ's April 2018 decision, plaintiff's request for a hearing was pending. (*See* AR 463.) While the SSI applications were not consolidated with the DIB application under consideration, the ALJ, as directed by the Appeals Council, considered evidence associated with the SSI applications. (*Id.*) The ALJ stated an earlier DIB application, filed in 2010 and administratively final as of January 2012, was not reopened with the October 2012 DIB application.

Plaintiff appealed the final ALJ decision to this Court. 20 C.F.R. §§ 404.984, 416.1484.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's degenerative disc disease, frozen left shoulder, other unspecified arthropathies, and psoriatic arthritis severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform light work, but with the following limitations: stand or walk four hours and sit six hours in an eight-hour workday, in a job with some duties performed while seated and some while standing, so that the person would be changing their position throughout the day in the normal course of their duties; never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, and crawl; unlimited reaching, except occasional overhead reaching with the left upper extremity; frequent fingering; and avoid concentrated exposure to extreme cold, excessive vibration, and workplace hazards, such as dangerous machinery and unprotected heights. With that assessment, and with the assistance of the VE, the ALJ found plaintiff able to perform past relevant work as an instructor, vocational training and business representative.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as an assembler and basket filler.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in evaluating medical opinions and in classifying his past relevant work. He requests remand for an award of benefits or, in the alternative, for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

<u>Medical Opinions</u>

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Plaintiff argues the ALJ erred in rejecting the opinions of treating physicians Dr. Eric Schoen and Dr. Paul Lewis, and in favoring the contradictory opinion of non-examining State agency physician Dr. Gordon Hale.

A.      <u>Dr. Eric Schoen</u>

Treating rheumatologist Dr. Schoen completed a physical functional evaluation form on February 21, 2014. (AR 812-14.) In assessing interference with basic work-related activities, Dr.

Schoen deemed plaintiff's cervical and lumbar spondylosis and left leg weakness marked, left shoulder adhesive capsulitis severe, and psoriatic arthritis moderate. (AR 813.) Dr. Schoen found plaintiff limited to sedentary work. (AR 813-14.) He noted a cervical spine MRI, knee, sacroiliac (SI) joint, and shoulder x-rays, all dated in November 2013, a September 2013 lumbar spine MRI, laboratory tests dated between September and December 2013, and an examination of plaintiff's left shoulder showing sixty degrees abduction and ninety degrees flexion, moderately reduced flexion and extension of the back, and 3/5 strength in left hip flexor. (AR 813.) He recommended a neurology consultation to evaluate leg weakness and arm paresthesias, and an orthopedics consultation to evaluate the dysfunctional left shoulder. (AR 814.)

The ALJ found this opinion inconsistent with Dr. Schoen's treatment notes and other objective evidence of record. (AR 474.) Dr. Schoen's treatment notes contained "some evidence of limited range of motion (ROM) in the left shoulder, but only mild tenderness anteriorly and 5/5 upper extremity strength, along with negative Romberg and straight leg testing, and non-tender back." (AR 474-75 (citing AR 445, 840, 873, 1533, 1537).) His treatment recommendations of physical therapy and shoulder manipulation "were also very conservative." (AR 475.)

The ALJ found the opinion inconsistent with other objective evidence, including: 2013 lumbar imaging showing only minimal and mild findings (AR 902, 425); physical exams documenting generally non-tender findings and negative straight leg raise testing (AR 1163, 837, 841, 405); November 2013 cervical imaging showing mild-to-moderate multilevel spondylosis with some neural foramina narrowing, but no cord compression (AR 902); imaging of hands showing no significant erosive or degenerative bony arthritic changes (AR 1731); and some physical exams documenting limited ROM in all axes of the neck, but otherwise showing no tenderness, full forward flexion, and adequate ROM, with no signs of neuromuscular disease (AR

405, 827, 844, 847). (AR 475.) With respect to plaintiff's shoulder, objective imaging revealed only mild degenerative changes and, although limited ROM was noted, he received relatively conservative treatment. (*See* AR 1535 (finding, based on history, physical examination, and radiologic studies, no evidence on ongoing radiculopathy, myelopathy, or spinal instability, and therefore no indication for neurosurgical intervention).)

The ALJ also found Dr. Schoen's opinion to rely, in part, on plaintiff's self-report. (AR 475.) She noted plaintiff's self-report was not fully reliable, pointing to evidence of symptom magnification and this Court's affirmation of the prior adverse credibility determination.

The ALJ stated the RFC accommodated plaintiff's lower extremity problems with essentially a sit/stand option. (*Id.*) However, "given the benign imaging studies of the bilateral hands and left shoulder and physical examinations showing that he retains normal/near-normal motor strength in the upper extremities ([AR 1139, 1725]), without any signs of atrophy ([AR 1139, 1522-23])," the ALJ found plaintiff retained the ability to perform light-level lifting/carrying prior to the DLI. (AR 475.)

Plaintiff points to chart notes accompanying Dr. Schoen's evaluation, listing the imaging study findings and his objective observations (AR 856-58), as well as to the opinion of Dr. Myrna Palasi, a Department of Social and Health Services (DSHS) staff doctor who reviewed Dr. Schoen's evaluation and limited plaintiff to sedentary work, with marked limitations in postural restrictions and gross or fine motor skills (AR 817-18). Plaintiff contends the ALJ minimized the objective evidence of record that formed the basis of Dr. Schoen's opinion by, for example, noting the minimal and mild lumbar findings, but not mentioning November 2013 imaging of his feet. In the chart note from the day of the evaluation, Dr. Schoen described the foot x-rays as showing symmetric narrowing with irregularity of both first MTP joints suggesting degenerative arthritis;

marginal erosions of a joint of the right great toe; osseous excrescence adjacent to the erosion of the right fifth MTP joint; flexion deformities at joints of the second through fifth toes bilaterally, making visualization of joint spaces difficult, but with the joint spaces appearing narrowed and intra-articular bony ankylosis involving multiple joints suspected, but not confidently confirmed; tuftal osteolysis involving multiple digits; spurring along the inferior margins of both calcanei; and erosions at the posterior-superior margin of the calcanei consistent with retrocalcaneal bursitis. (AR 857.)  On examination, he observed splaying of toes with claw deformities in most lateral toes bilaterally.  (*Id*.)  He found hand and foot deformities and tenderness suggestive of psoriatic arthritis.

Plaintiff denies inconsistency with the objective evidence or treatment notes.  He asserts his feet are significantly affected by psoriatic arthritis as shown in the imaging study and observations on exam.  He contrasts the ALJ's statement that imaging studies of his hands showed no significant or erosive or degenerative bony arthritic changes, with Dr. Schoen's contemporaneous observation of "tender bilateral 3rd finger>4th finger PIP joints with trace swelling, flexion deformities in DIP joints in few digits, intact fist, decreased claw." (*Id*.; *see also* AR 837 (November 5, 2013:  Dr. Donna Moore observed "sausage-like fingers on both hands, the right middle finger and the left index finger, which are very tender over the PIP joints, could be psoriatic arthritis."))  Also, the SI joint imaging reviewed by Dr. Schoen showed joints "symmetrically abnormal in appearance with what appears to be partial intra-articular osseous fusion," and "public symphysis [] abnormal in appearance being narrowed with subchondral erosions and sclerosis."  (AR 857.)

Plaintiff states that, earlier in the decision, the ALJ minimized the November 2013 imaging of his feet as "show[ing] deformities and other findings consistent with psoriatic arthritis[,]"

without discussing the severity of the findings. (AR 472.) As plaintiff observes, the ALJ also described Dr. Schoen's documentation of splaying with claw deformities in most lateral toes bilaterally, contrasted with "examinations generally show[ing] no swelling, and 5/5 strength in the bilateral ankles and 4/5 toe extension on the left ([AR 837, 850, 873, 877])." (*Id.*) Plaintiff further takes issue with the alleged reliance on his self-report given the absence of any indication Dr. Schoen questioned his credibility. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) ("[A]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations."; noting nothing in record to suggest physician disbelieved claimant's description of symptoms or relied on those descriptions more than his own clinical observations).

The ALJ did not ignore the evidence relating to plaintiff's feet. As plaintiff concedes, the ALJ directly addressed the November 2013 imaging of plaintiff's feet and contrasted Dr. Schoen's observations on examination with other objective evidence in the record. (*See* AR 472.) The ALJ subsequently contrasted the objective evidence of record with Dr. Schoen's opinion as related to plaintiff's hands, shoulder, back, and cervical conditions. (AR 474-75.) She explained that, while the RFC "already accommodates for the claimant's lower extremity problems with essentially a sit/stand option," the objective evidence relating to plaintiff's hands, shoulders, and upper extremities supported a finding he could perform lifting and carrying at the level of light work. (AR 475.) The ALJ, in other words, accepted Dr. Schoen's opinion of restrictions in the lower extremities. The ALJ specifically provided in the RFC for plaintiff to sit up to six hours in an eight-hour workday, a restriction accounted for in a sedentary position. *See generally* Social Security Ruling (SSR) 96-9p (the full range of sedentary work requires the ability to stand and

walk for a total of two out of eight hours, and to sit for approximately six out of eight hours).

The ALJ also addressed plaintiff's hand and SI joint pain. She noted plaintiff's complaint of progressive hand pain, October 2013 x-rays showing unchanged lucency when compared to prior imaging and otherwise revealing no significant erosive or degenerative bony arthritic changes, and some examinations noting trace swelling, tenderness, and flexion deformities in some finger joints consistent with psoriatic arthritis. (AR 471 (citations omitted).) The ALJ contrasted this with evidence showing plaintiff still maintained 5/5 extension bilaterally and intact fist (AR 840, 865, 878, 927), October 2014 treatment notes indicating he "still had a few sore joints in his hands, but that he denied pain and demonstrated improvement" (AR 927), and plaintiff's testimony of using a computer one-to-two hours daily and his ability to do laundry, clean, and pull weeds. (AR 471.) The ALJ noted that, while plaintiff complained of SI joint pain and November 2013 imaging showed findings consistent with psoriatic sacroiliitis and psoriatic changes of the public symphysis, "the claimant's feeling of leg instability was attributed to diffuse quad atrophy and hip examinations showed normal [ROM]." (*Id.* (citing AR 877-78.) The ALJ also accounted for some degree of limitation in relation to these and other conditions by restricting plaintiff in standing, walking, sitting, and alternating positions, in relation to postural and environmental issues, to only occasional overhead reaching with the left upper extremity, and to frequent fingering. (AR 467.)

The ALJ is responsible for resolving conflicts in the medical record. *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008). When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Accord Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999).

Plaintiff does not establish a failure to rationally interpret the record. The ALJ offered specific and legitimate reasons for rejecting Dr. Schoen's opinion in finding inconsistency with his own treatment notes, other objective evidence in the record, and his conservative treatment recommendations. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may reject a physician's opinion based on inconsistency with the record); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (ALJ may reject physician's opinion due to discrepancy or contradiction between the opinion and the physician's own notes or observations); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding rejection of treating physician's opinion based on discrepancy between the opinion and the physician's description of the claimant and prescription of a conservative course of treatment; also affirming rejection of a treating physician's opinion that was inconsistent with evidence of a claimant's activity).

The Court, however, agrees with plaintiff as to the insufficient basis to conclude Dr. Schoen relied on plaintiff's subjective reports. "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041 (quoting *Morgan*, 169 F.3d at 602). Dr. Schoen's report identified objective evidence in the record (AR 813) and lacked any indication of reliance on plaintiff's self-report. However, given the other specific and legitimate reasons offered in relation to the opinion of Dr. Schoen, this error is properly deemed harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'"); *Carmickle*, 533 F.3d at 1162-63 (where ALJ provides specific reasons supporting an assessment and substantial evidence supports the conclusion, error may be deemed harmless).

Although plaintiff did not raise the issue in his opening brief, the Commissioner asserts the

ALJ also appropriately discounted opinions from Dr. Schoen offered in 2016. In a physical functional evaluation form completed on August 10, 2016, Dr. Schoen cited the same imaging and lab tests and similar examination findings, identified the same degree of interference with work activities, again assessed a limitation to sedentary work, and recommended treatment through medication for psoriatic arthritis and physical therapy. (AR 1676-78.) In a medical source statement dated August 11, 2016, Dr. Schoen found plaintiff could stand/walk less than two hours and sit about two hours in an eight hour workday, occasionally lift and carry ten pounds, rarely reach with the left shoulder, occasionally handle and finger, occasionally look down, never turn head right or left, rarely look up, and frequently hold head in static position, was unlimited in his ability to push and pull with the upper extremities, would be off-task twenty-five percent or more of the time and absent about four days per month, and noted plaintiff used medication with a side effect of drowsiness. (AR 1002-03.) The ALJ gave the opinions little weight because they were issued after the December 31, 2014 DLI, noting he considered the February 2014 opinion Dr. Schoen offered during the period at issue. (AR 477.)

The Commissioner states Dr. Schoen offered these opinions almost two years after the DLI and did not assign the limitations to the relevant time period. She maintains the ALJ appropriately discounted the opinions on this basis. *See Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996) (opinion of doctor who examined claimant after expiration of insured status entitled to less weight than opinion of doctor who completed a contemporaneous exam). Plaintiff counters that the mere fact these opinions were rendered after his DLI does not diminish their validity in assessing his condition during the relevant time period. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1228-29 (9th Cir. 2010) ("[E]vidence post-dating the DLI is probative of . . . pre-DLI disability."); *Lester*, 81 F.3d at 832 ("'[M]edical evaluations made after the expiration of a claimant's insured

status are relevant to an evaluation of the preexpiration condition.'") (quoting *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988).)

As stated by the Ninth Circuit: "We think it is clear that reports containing observations made after the period for disability are relevant to assess the claimant's disability. It is obvious that medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis." *Smith*, 849 F.2d at 1225 (internal citations omitted). However, in this case, there is no indication Dr. Schoen rendered retrospective opinions in 2016. (*See* AR 1002-03, 1676-78.) This fact, taken together with the Appeals Council's directive to consider evidence relating to plaintiff's April 2014 SSI application "pertinent to the current case's period-at-issue[,]" the Court finds no error. *See, e.g.*, *Morgan v. Colvin*, No. 12-1235, 2013 U.S. Dist. LEXIS 163492 at *30 (D. Or. Nov. 13, 2013) ("[I]t is well-established that an ALJ may reject a medical opinion, even that of a treating doctor, where 'it was completed . . years after claimant's DLI and was not offered as retrospective analysis.'") (quoted source omitted); *Boucher v. Colvin*, No. C13-47, 2013 U.S. Dist. LEXIS 100844 at *6-8 (W.D. Wash. July 18, 2013) (ALJ reasonably found later test results not probative in relation to earlier time period; also finding the absence of any suggestion of retroactive application to support the ALJ's conclusion); and *Capobres v. Astrue*, No. 09-682, 2011 U.S. Dist. LEXIS 31818 at *13-14 (D. Ida. Mar. 25, 2011) (ALJ did not err in rejecting opinion because it was outside relevant time period and not controlling or persuasive before the DLI, nearly two and half years earlier, where the opinion was not offered as retrospective to the relevant time period).[2]

---

[2] It should also be noted that, were the Court to apply the harmless error analysis and look to "the record as a whole to determine whether the error alters the outcome of the case[,]" *Molina*, 674 F.3d at 1115, Dr. Schoen's contemporaneous chart notes would argue against a finding of harm. (AR 1679-81 (August 11, 2016: reporting intermittent soreness in right index finger MCP joint, old work-related extensor tendon injury, worsening insomnia, transient right-sided head pains one-to-two weeks prior now better, and psoriasis still present but stable; findings on examination included mildly tender right index finger MCP

B.     Dr. Paul Lewis

Dr. Lewis, a treating physician, completed a medical source statement on March 26, 2013. (AR 411-12.)  He opined plaintiff could stand/walk about four hours and sit at least six hours in an eight-hour workday, with the need to shift positions at will, could rarely twist, occasionally stoop (bend) and reach, and frequently handle and finger, would be off-task (meaning symptoms severe enough to interfere with attention and concentration) twenty-five percent of more of the time, and would be absent more than four days per month.  (*Id.*)  In response to a question asking for a description of any side effects of medication that may have implications for working, Dr. Lewis stated: "Amitriptyline may cause A.M. drowsiness."  (AR 412.)  He did not opine as to any lifting/carrying or push/pull limitations, stating he had not evaluated those issues.  (AR 411-12.)

The ALJ found Dr. Lewis's opinion as to plaintiff's ability to frequently finger consistent with his treatment notes, which indicated plaintiff experienced stiffness without swelling or redness in the morning, with improvement once he moves around and showers.  (AR 476 (citing AR 1563).)  This opinion was also consistent with objective imaging showing no significant erosive or degenerative bony arthritic changes, and examinations revealing 5/5 bilateral extension and intact fist.  (*See* AR 820-910.)  The sitting, standing, and walking limitations, with the ability to shift positions, were accommodated for in the RFC.  The ALJ, however, found the remaining portions of the opinion from Dr. Lewis inconsistent with his own treatment notes, plaintiff's self-reports, and other objective evidence in the record.

joint, no swelling, flexion deformities in DIP joints in few digits, intact fist, decreased claw, wrists nontender, no swelling, normal ROM, shoulders with left with abduction flexion to 120 degrees, and "numerous, erythematous, scaly plaques . . left palm and bilateral plantor feet with diffuse hyperkeratosis."; updated labs were normal and updated imaging included April 2014 left shoulder MRI with only mild findings; Dr. Schoen found hand and foot deformities and tenderness secondary to psoriatic arthritis, stable on current regimen, psoriasis chronic with large plaques on his back, frozen left shoulder still present but improved ROM after manipulation by orthopedist, intermittent lower extremity paresthesias, with EMG and neurology consultation nondiagnostic, and insomnia, will increase amitriptyline dose).)

The ALJ noted, in particular, the absence of objective support for the opinion plaintiff would be off-task twenty-five percent of the workday and miss more than four days of work per month. (AR 476.) She pointed to treatment notes from Dr. Lewis, dated between February 2012 through the date of his opinion, showing plaintiff had some loss of motion in the neck and was otherwise alert, cooperative and in no acute distress. (AR 390 (April 2012); AR 392 (June 2012 (reduced ROM in neck); AR 394-95 (September 2012 (reduced ROM in neck and pain-free ROM in right knee, without swelling or tenderness); AR 398 (October 2012 (physical examination unremarkable); AR 1548-49 (December 2012 (loss of motion in neck, but no tenderness over spinous process, some tenderness in upper trapezius muscles and mild tenderness in left elbow, but free ROM in elbow); AR 1547 (March 2013 (decreased ROM in neck, but no tenderness in spinous process, tenderness in left forearm and decreased grip strength in left versus right, but retained intact deep tendon reflexes of upper extremities).) Dr. Lewis's findings on examination did not corroborate his assessment as to time off-task or absences. Rather, his opinion appeared to be based largely on plaintiff's self-report, which the ALJ did not find fully reliable for a number of reasons, including evidence of symptom magnification. (AR 476.)

The ALJ found the statement regarding side effects from amitriptyline not supported. (AR 477.) Dr. Lewis prescribed amitriptyline, at plaintiff's request, to use at bedtime for pain and for sleep. Plaintiff had used it in the past with improvement and without appreciable side effects. (AR 390 ("Would like to have some amitriptyline to use at bedtime for sleep and pain. He has found this of value in the past without appreciable side effects.")) Plaintiff subsequently reported no drowsiness or sleep issues caused by amitriptyline. "In fact, Dr. Lewis noted that Amitriptyline continued to be effective for sleep and did not note any side effects." (AR 477 (citing AR 1563).)

The ALJ further observed that, in June 2012, plaintiff reported only taking ibuprofen

periodically for neck and shoulder pain, and otherwise felt well. (AR 392, 1554.) In September 2012, plaintiff reported neck soreness and, while examination showed limited ROM except full forward flexion, there was no appreciable tenderness, it was gradually improving, and he was doing pretty well overall. (AR 394, 1548.) This was consistent with the finding of Dr. Lewis on the day he provided his opinion. (*See* AR 1546-47.) "Dr. Lewis indicated that the claimant did not look to be in severe pain and that he walked without difficulty." (AR 477 (citing AR 1546).) Testing showed active ROM limitation to about thirty degrees off center, normal deep tendon reflexes in left and right arms, no evident effusion of left knee, normal ROM, normal Anterior Drawer, normal MacMurray's testing, and normal weight-bearing testing. Dr. Lewis found plaintiff's chronic neck pain stable, along with arthritis and chronic knee pain. (AR 1546.)[3]

Finally, the ALJ found the opinion of Dr. Lewis inconsistent with other objective evidence of record. (AR 477.) He described that evidence as documenting no complaints of medication side effects, mild objective findings, and conservative treatment and pain management, and cited to his earlier discussion.

Plaintiff takes issue with the ALJ's finding of an absence of objective support for the off-task and attendance opinions. He notes the ALJ misstated the amended onset date as February 2012 and that only three of the chart notes cited came after his actual, October 2012 amended date

---

[3] Although included on the same page as some of Dr. Lewis's treatment notes on March 13, 2013, the specific findings and observations recited by the ALJ in this portion of the decision pertain to a subsequent, June 26, 2013 appointment with Dr. Lewis. (*See* AR 1545-46.) However, both the sets of notes provide support for the ALJ's conclusion. In the March 13, 2013 appointment, plaintiff reported some transient numbness of left hand and forearm lasting a couple of minutes and occurring on three occasions since January 2013, a few recent shoulder spams lasting a couple of seconds in the past sixty days, occasional shots of pain at side of head, and "'pretty bad'" baseline neck and head pain. (AR 1547.) He continued on amitriptyline and ibuprofen, which was helping some, with pretty good sleep on amitriptyline. (*Id.*) Dr. Lewis found plaintiff alert, cooperative, and with a straight forward demeanor, limited ROM, but no tenderness of the cervical spine, area of tenderness on the left forearm, brisk and equal deep tendon reflexes of upper extremities, and moderately diminished grip strength on the left. He diagnosed cervical degenerative disc disease and arm pain either transient or related to remote injury.

of onset.  He rejects the contention his status as alert, cooperative, and in no acute distress in medical appointments means he would be able to stay on task for a full day, or even two-hour increments, or consistently maintain attendance.  He argues the contention Dr. Lewis based these opinions on his self-reports improperly calls for speculation.  That is, there is no evidence he told Dr. Lewis anything about being off-task or absent.  He also denies a lack of support for the statement regarding amitriptyline serves as a specific, legitimate reason because Dr. Lewis "did not state affirmatively that the claimant had side effects from amitriptyline." (Dkt. 10 at 12.)  Dr. Lewis, instead, indicated "amitriptyline may cause A.M. drowsiness" (AR 412), and therefore appeared to offer a medical fact not conflicting with the record or with any of plaintiff's statements.  Plaintiff reiterates his contention that, in asserting inconsistency with other objective evidence, the ALJ mentioned, but minimized that evidence.

Plaintiff also takes issue with the fact the ALJ both accepted and rejected portions of the opinion of Dr. Lewis.  *See Craig v. Astrue*, No. 06-55213, 2008 U.S. App. LEXIS 5791 at *5-6 (9th Cir. Mar. 11, 2008) (noting ALJ offered no reason as to why a physician's opinion was persuasive in one regard, but not another) (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."); *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("[T]he Secretary's attempt to use only the portions [of a report] favorable to her position, while ignoring other parts, is improper.").  He notes the ALJ failed to find he would ever be off-task or absent.

The ALJ did not err in partially rejecting the opinion of Dr. Lewis.  An ALJ may, as stated above, reject a physician's opinion upon finding it inconsistent with the physician's own treatment notes and with other objective evidence in the record.  *Tommasetti*, 533 F.3d at 1041; *Bayliss*, 427

F.3d at 1216. An ALJ also properly considers the supportability of a medical opinion, 20 C.F.R. § 404.1527(c)(3), including an absence of support in a claimant's own reporting, *Rollins*, 261 F.3d at 856 (noting a claimant had never claimed to have problems with many of the conditions and activities the physician instructed her to avoid). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. The ALJ here reasonably rejected portions of the opinion of Dr. Lewis based on inconsistency with treatment records, other objective evidence, and plaintiff's symptom reporting.

As plaintiff concedes, Dr. Lewis appeared to make a general observation regarding a possible side effect of amitriptyline and did not opine plaintiff experienced morning drowsiness. As such, this statement could not account for limitations in attention and concentration or in relation to attendance. The ALJ nonetheless also properly considered that the medical record, including plaintiff's own symptom reporting, did not support the conclusion he experienced morning drowsiness or any other medication side effect. Indeed, and as plaintiff also concedes, there is no evidence he reported limitations in relation to attention, concentration, or attendance.

Also, and contrary to plaintiff's contention, the ALJ did not conclude plaintiff's presentation at medical appointments, standing alone, contradicted the assessed limitations. The ALJ considered these observations together with all of the other information in the treatment notes as failing to corroborate limitations assessed. Plaintiff's contention the ALJ minimized other objective evidence in the record fails for the reasons stated above.

Finally, the ALJ reasonably inferred that, in opining as to attention, concentration, and attendance, Dr. Lewis relied in substantial part on plaintiff's self-reporting as to the degree of his impairment. An ALJ may, where appropriate, reject a physician's opinion on this basis. *See, e.g.*,

*Tommasetti,* 533 F.3d at 1041. Unlike the report from Dr. Schoen, the medical source statement from Dr. Lewis is devoid of reference to any objective evidentiary support or explanations for the opinions offered. *Cf. Ghanim v. Colvin*, 763 F.3d 1154, 1162-63 (9th Cir. 2014) (ALJ here "offered no basis" for conclusion medical opinions were based more heavily on self-reports, where letter and evaluation discussed treating providers' "observations, diagnoses, and prescriptions, in addition to . . . self-reports."); *Ryan*, 528 F.3d at 1199-1200 (noting nothing in record to suggest physician disbelieved claimant's description of symptoms or relied on those descriptions more than his own clinical observations). The ALJ drew a logical inference in concluding Dr. Lewis relied in substantial part on plaintiff's self-report. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("In reaching his findings, the law judge is entitled to draw inferences logically flowing from the evidence.") (cited sources omitted). For this reason, and for the reasons stated above, the ALJ's assessment of the opinion of Dr. Lewis has the support of substantial evidence.

C.    Dr. Gordon Hale

Dr. Hale, in December 2012, opined plaintiff could perform a reduced range of light work, with limitations including occasionally lifting twenty pounds and frequently lifting ten pounds, stand and/or walk and sit about six hours in an eight-hour workday, limited push/pull and occasional overhead reaching with left upper extremity, occasionally climb ladders, ropes, and scaffolds, frequently crawl and kneel, and avoid concentrated exposure to extreme cold, vibration, and workplace hazards. (AR 82-83.) The ALJ found this opinion generally consistent with available evidence, which showed improvement with physical therapy, mild cervical degenerative disc disease, mildly limited ROM of the neck, and only minimal sclerosis and spurring in the upper thoracic and mid-lumbar spine. (AR 474 (citing AR 264-401).) While the record contained evidence of shoulder impingement, shoulder imaging from June 2011 was otherwise normal. (AR

402.)  The ALJ also found the opinion consistent with the longitudinal evidence, including physical exam findings, objective imaging, and plaintiff's reported activities.  However, to further accommodate the later-received evidence of psoriatic arthritis and other objectively supported symptoms, the ALJ included additional limitations in the RFC.

Plaintiff asserts an absence of substantial evidence support for the assessment of Dr. Hale's opinion.  He states the psoriatic arthritis diagnosis was not confirmed until later in 2013, when most of the imaging studies were performed.  (*See* AR 842, 848.)  He reiterates the contention the RFC is not consistent with the imaging of his feet and maintains the ALJ should have accorded more weight to the opinion of treating physician and specialist Dr. Schoen.  Plaintiff also argues the ALJ's assessment is undermined by the fact she mistakenly construed the March 2013 opinion of non-examining State agency physician Dr. Robert Hoskins as limiting him to sedentary work, when both Dr. Hale and Dr. Hoskins found he could stand/walk for six out of eight hours.  (AR 81-84, 93-95.)

As the Commissioner explains, the ALJ appropriately described the opinion of Dr. Hoskins as supporting a limitation to sedentary work because he found plaintiff could not lift more than ten pounds at a time (AR 94).  20 C.F.R. § 404.156(a)-(b) (sedentary work involves lifting no more than ten pounds at a time and light work involves lifting no more than twenty pounds at a time).  The ALJ's consideration of the opinion of Dr. Hoskins does not undermine his analysis of any other medical opinion.

Nor does plaintiff otherwise demonstrate error in relation to Dr. Hale.  The ALJ provided the necessary specific and legitimate reasons for rejecting opinion evidence from Dr. Schoen, while accounting for evidence relating to plaintiff's feet by assessing an RFC allowing for up to six hours of sitting and alternating positions throughout the workday.  The ALJ also reasonably

accounted for plaintiff's later diagnosis with psoriatic arthritis by incorporating greater limitations in the RFC than assessed by Dr. Hale, including a limitation to four hours of standing or walking and the ability to alternate positions, prohibiting climbing, limiting stooping, kneeling, crouching, and crawling to occasional, and limiting fingering to frequent. He also took subsequent imaging into consideration in finding Dr. Hale's opinion consistent with that and other longitudinal evidence of record. Plaintiff's assignment of error in relation to Dr. Hale lacks merit.

<u>Past Relevant Work</u>

Plaintiff avers error in the ALJ's classification of his past relevant work. At the remand hearing, he testified and his counsel argued the job descriptions used for his work as a "union organizer" and "instructor, vocational training" were not accurate. (*See* AR 504-05, 509-12; *see also* AR 810-11.) Yet, the ALJ did not take VE testimony at the remand hearing or ask questions about this issue. Plaintiff avers resulting error in the step four determination.

As the Commissioner argues, even if the ALJ erred at step four, the ALJ's alternative step five finding suffices to uphold the non-disability determination. *See Tommasetti*, 533 F.3d at 1042-43 (step four error harmless given alternative finding at step five). Plaintiff, at most, argues harmful error at subsequent steps of the sequential evaluation given the ALJ's failure to properly evaluate medical opinion evidence. This mere restating of argument does not establish error at step five. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

**CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this <u>12th</u> day of April, 2019.

Mary Alice Theiler
United States Magistrate Judge

ORDER
PAGE - 21